UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL J. LOMBARDO and
MELISSA A. LOMBARDO,
        Plaintiffs,

        v.                                          CIVIL ACTION NO.
                                                    18-10299-PBS

CITIMORTGAGE, INC.,
        Defendant.

**REPORT AND RECOMMENDATION RE:**
**DEFENDANT CITIMORTGAGE, INC.'S, MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**(DOCKET ENTRY # 6)**

**March 4, 2019**
**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss filed by defendant CitiMortgage, Inc. ("defendant"). (Docket Entry # 6). Plaintiffs Melissa and Michael Lombardo ("the Lombardos" or "plaintiffs") oppose the motion. (Docket Entry # 21). After conducting a hearing, this court took the motion (Docket Entry # 6) under advisement.

PROCEDURAL BACKGROUND

On February 16, 2018, plaintiffs filed a complaint against defendant alleging misconduct in connection with a 2003 residential mortgage ("the mortgage") on the Lombardos' home. (Docket Entry # 1). The subsequently filed amended complaint raises the following causes of action against defendant: (1) breach of contract (Count I); (2) violation of the covenant of

good faith and fair dealing (Count II); (3) promissory estoppel (Count III); and (4) violation of section nine of Massachusetts General Laws chapter 93A ("chapter 93A") (Count IV).  (Docket Entry # 4, ¶¶ 43-69).  Defendant moves to dismiss all of the claims (Docket Entry # 6) which plaintiffs oppose (Docket Entry # 21).

## STANDARD OF REVIEW

In conducting a Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") analysis, a court "'accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor.'"  Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 52-53 (1st Cir. 2013) (citation omitted).  "To survive a motion to dismiss, the complaint must allege 'a plausible entitlement to relief.'"  Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008) (quoting Bell Atlantic v. Twombly, 550 U.S. 554, 559 (2007)).  While "detailed factual allegations" are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement for relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic v. Twombly, 550 U.S. at 555; Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009).  "'[B]ald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation' or 'subjective characterizations, optimistic

2

predictions, or problematic suppositions'" are ignored.
Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)
(quoting Washington Legal Found. v. Massachusetts Bar Found.,
993 F.2d 962, 971 (1st Cir. 1993)).

In evaluating a Rule 12(b)(6) motion, the court may
consider a limited category of documents outside of the amended
complaint without converting the motion into one for summary
judgment.[1]  Such documents include "documents the authenticity of
which are not disputed by the parties"; "official public
records"; "documents central to plaintiffs' claim"; or
"documents sufficiently referred to in the complaint."
Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); accord Freeman
v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013); see Butler
v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013) (court may
supplement facts in complaint "by examining 'documents
incorporated by reference into the complaint, matters of public
record, and facts susceptible to judicial notice'") (quoting
Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011));
Giragosian v. Ryan, 547 F.3d 59, 65-66 (1st Cir. 2008) (court
can consider documents relied on in complaint, public records
and other documents subject to judicial notice without having to

---

[1]  "Exhibits attached to the complaint are properly considered
part of the pleading 'for all purposes,' including Rule
12(b)(6)."  Trans-Spec Truck Service, Inc. v. Caterpillar Inc.,
524 F.3d 315, 321 (1st Cir. 2008).

3

convert the motion).  Defendant's request to take judicial notice of Home Affordable Modification Supplemental Directive 09-01, a public document available on a governmental website, is therefore appropriate.  See Hadley v. Chrysler Group LLC, 2014 WL 988962, at *2 (E.D.Mich. March 13, 2014) ("[c]ourt can take judicial notice and consider documents posted on a government website"); Wilson v. Amneal Pharmaceuticals, L.L.C., 2013 WL 6909930, at *4 (D.Idaho Dec. 31, 2013) ("appropriate to take judicial notice of information if it is made publicly available by government entities on the internet, and neither party disputes the authenticity of the websites or the accuracy of the information displayed on the website"); see generally Hotel Employees & Restaurant Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Department of Parks & Recreation, 311 F.3d 534, 549 (2nd Cir. 2002).  It is also appropriate to take judicial notice of the related court filings plaintiffs attach to their opposition.  See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand"); see, e.g., Bluetarp Financial, Inc. v. Matrix Construction Co., Inc., 709 F.3d 72, 78 n.4 (1st Cir. 2013) (taking judicial notice of related state court cases).  Facts in the Rule 12(b)(6) record are as follows.

FACTUAL BACKGROUND

Plaintiffs own property located at 29 Country Road in Hanover, Massachusetts ("the property").  (Docket Entry # 4, ¶¶ 4, 16).  Defendant, "a subsidiary of CitiBank, N.A., is a New York corporation with principal offices located in O'Fallon, Missouri."  (Docket Entry # 4, ¶ 5).

On June 20, 2003, plaintiffs "took out a first lien residential mortgage loan, secured by their home, with Citizens Mortgage Corporation ("Citizens")."  (Docket Entry # 4, ¶ 17). On the same day, Citizens assigned the mortgage to HSCB Mortgage Corporation ("HSBC").  (Docket Entry # 4, ¶ 18).  "On April 7, 2004, HSBC executed an assignment of the mortgage to" defendant. (Docket Entry # 4, ¶ 19).

In or around March 2008, plaintiffs contacted defendant to inquire about a mortgage modification.  (Docket Entry # 4, ¶ 20).  In response, defendant invited plaintiffs to apply for a loan modification under the Home Affordable Modification Program ("HAMP").[2]  (Docket Entry # 4, ¶ 22) (Docket Entry # 21-1).[3]  On

---

[2]  HAMP is one of "an array of programs designed to identify likely candidates for loan modifications" to incentivize and "encourage lenders to renegotiate their mortgages."  Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 228 (1st Cir. 2013).  The Secretary of the Treasury created HAMP pursuant to authority granted by Congress under the Emergency Economic Stabilization Act of 2008.  12 U.S.C. §§ 5219-5220; see Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d. 172, 176 (D. Mass. 2011).
[3]  It is appropriate to consider the cover letter (Docket Entry # 21-1), which the amended complaint references (Docket Entry # 4,

June 30, 2009, defendant provided plaintiffs with a Home

Affordable Modification Trial Period Plan ("TPP") accompanied

with a cover letter.  (Docket Entry # 4, ¶ 22) (Docket Entry #

4-1) (Docket Entry # 21-1).  The cover letter provides that

plaintiffs may be eligible for a mortgage modification "if

[plaintiffs] qualify under the federal government's Home

Affordable Modification program and comply with the terms of the

Trial Period Plan . . .."  (Docket Entry # 21-1, p. 1).

Plaintiffs executed and returned the TPP application to

defendant in a timely manner accompanied with other

documentation per defendant's request.  (Docket Entry # 4, ¶ 23)

(Docket Entry # 4-1).

The TPP directed plaintiffs to make three payments of

$1,124.99, due monthly on or before July 30, August 30, and

September 30, 2009.  (Docket Entry # 4, ¶ 23) (Docket Entry # 4-

1).  The TPP began on the "Trial Period Effective Date" and

ended "on the earlier of (i) the first day of the month

following the month in which the last Trial Period Payment is

due (the 'Modification Effective Date') or (ii) termination of

this Plan."  (Docket Entry # 4-1, p. 2).  In the TPP, plaintiffs

acknowledged that the TPP payments were "an estimate of the

---

¶ 22) and plaintiffs attach as an exhibit to the opposition
(Docket Entry # 21-1).  See Watterson v. Page, 987 F.2d at 3
(1st Cir. 1993).

payment that [would] be required under the modified loan terms .

. .." (Docket Entry # 4-1, p. 2). The TPP states that if

plaintiffs complied by making these monthly payments and their

representations in section one "continue[d] to be true," then

defendant "will provide [them] with a Home Affordable

Modification Agreement ('Modification Agreement'), as set forth

in Section 3, that would amend and supplement" the mortgage.

(Docket Entry # 4-1). Section three provides that defendant

will determine a "new payment amount" at the end of the trial

period and send plaintiffs "a Modification Agreement" for their

"signature which will modify [the mortgage] as necessary to

reflect this new payment amount and waive any unpaid late

charges accrued to date." (Docket Entry # 4-1, p. 3).

Under the terms of the TPP, plaintiffs acknowledged that

defendant would hold the three payments "in a non-interest

bearing account until they total an amount" sufficient to pay

plaintiffs' older delinquent monthly payment in full. (Docket

Entry # 4-1, p. 2). Plaintiffs also acknowledged that when

defendant accepts and posts a payment, it is not "a waiver of,

the acceleration of the loan or foreclosure action and related

activities and shall not constitute a cure of [plaintiffs']

default . . .." (Docket Entry # 4-1, p. 2). In addition,

plaintiffs acknowledged that section 2(G) of the TPP was "not a

modification of" the mortgage and it "will not be modified

7

unless and until (i) [plaintiffs] meet all of the conditions required for modification, (ii) [plaintiffs] receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed." (Docket Entry # 4-1, p. 2). Finally, plaintiffs acknowledged that the "terms and provisions of the [mortgage] remain in full force and effect" and the TPP is not "a satisfaction or release in whole or in part of the obligations contained in the [mortgage]." (Docket Entry # 4-1, p. 3).

Plaintiffs made timely payments in compliance with the TPP for July, August, and September 2009. (Docket Entry # 4, ¶ 28). After plaintiffs made their final payment in accordance with the TPP, they continued to make payments until defendant began refusing those payments. (Docket Entry # 4, ¶ 28). After executing the TPP application, plaintiffs contacted defendant on multiple occasions inquiring about the status of their modification agreement. (Docket Entry # 4, ¶¶ 23, 30). Defendant's representatives repeatedly informed plaintiffs "that their modification was still being processed." (Docket Entry # 4, ¶ 30).

On April 13, 2010, defendant informed plaintiffs in writing ("the denial letter") that their application for a HAMP modification agreement was rejected because "[plaintiffs'] loan was previously modified under the Home Affordable Modification

8

Program" and the property was ineligible because the property "[h]as more than four dwelling units." (Docket Entry # 4-2) (Docket Entry # 4, ¶¶ 32, 33). The mortgage, however, had not been previously modified and their home did not have four dwelling units. (Docket Entry # 4, ¶ 33). Defendant refused to rectify the errors regarding the denial after several conversations with plaintiffs. (Docket Entry # 4, ¶¶ 35-36). At the time plaintiffs filed this action, defendant had not provided them with a HAMP loan modification. (Docket Entry # 4, ¶ 37).

Plaintiffs filed a previous lawsuit against defendant in March 2012. (Docket Entry # 4, ¶ 39); see Lombardo v. CitiMortgage, Inc., Civil Action No. 12-10451-WGY (D. Mass. 2012). Plaintiffs were represented by a law firm that filed a putative class action ("the Calfee class action") on November 29, 2010 in the United States District Court in the District of Massachusetts against defendant for its alleged widespread breach of homeowner TPP agreements. (Docket Entry # 4, ¶ 39); Calfee v. CitiMortgage, Inc., Civil Action No. 10-12051-WGY (D. Mass. 2010). In August 2012, plaintiffs' attorney dismissed the March 2012 "case without prejudice based on the expectation that [the] case would be resolved as a part of the [Calfee] class action." (Docket Entry # 4, ¶ 39). The Calfee "class action was subsequently" transferred for "consolidated pretrial

9

proceedings" and combined with several other class actions against defendant in the United States District Court for the Central District of California ("CitiMortgage class action"). (Docket Entry # 4, ¶ 39) (Docket Entry # 21-4, p. 5).[4] Plaintiffs in the CitiMortage class action "moved to certify eight statewide classes of individuals," including a statewide Massachusetts class, "(1) whose home mortgages were serviced by CitiMortgage, Inc. (Citi); (2) who, since April 13, 2009, entered into a Home Affordable Modification Program (HAMP) Trial Payment Plan (TPP) Agreement; and (3) who made all payments required by their TPP agreements."[5]  In re CitiMortgage, Inc. Home Affordable Modification Program Litigation, MDL No. 11-2274-DSF, 2013 WL 8844095 (C.D. Cal. Oct. 7, 2013) (Docket Entry # 515).  On October 7, 2013, the district court in the CitiMortgage case denied class certification.  Id.; (Docket Entry # 4, ¶ 39).  The court did not determine whether the claims were meritorious, rather, it determined "that the case was not ripe as a class action because individual issues" predominated over "common issues."  (Docket Entry # 4, ¶ 39). On March 2, 2016, the Ninth Circuit upheld the district court's

---

[4]  Page numbers refer to the page as docketed rather than the page number of the document itself.
[5]  This is the same proposed class as the proposed class in the Calfee class action.  Calfee v. CitiMortgage, Inc., Civil Action No. 10-12051-WGY (Docket Entry # 36, ¶ 157).

denial of class certification in the CitiMortgage Class Action. (Docket Entry # 4, ¶ 39).

Meanwhile, as a result of defendant's denial of the loan modification for plaintiffs, they experienced a loss of equity and "accrued interest and fees that would not have accrued had [the 2003 mortgage] been timely modified."  (Docket Entry # 4, ¶ 42).  In addition, plaintiffs' credit was damaged, which deprived "them of the ability to obtain extensions of credit." (Docket Entry # 4, ¶ 42).  Finally, plaintiffs suffered physically and emotionally, reporting "[t]hey are frequently unable to sleep" and have "significant feelings of anger, stress, tension, sadness, and frustration."  (Docket Entry # 4, ¶ 42).

DISCUSSION

## I.  Breach of Contract

Defendant moves to dismiss the breach of contract claim because the TPP was not a binding contract and defendant did not have an obligation to offer plaintiffs a permanent loan modification.  Defendant contends that the mortgage could "'not be modified'" unless and until plaintiffs received "'a fully executed copy of this Plan'" countersigned by defendant. (Docket Entry # 7, p. 7) (quoting page two of the TPP).  More specifically, defendant argues that plaintiffs cannot prevail on their breach of contract claim because:  (1) plaintiffs did not

11

receive a fully executed copy of the TPP from defendant; (2) plaintiffs were not eligible under the federal government's HAMP requirements; and (3) the TPP's language requires defendant's countersignature for a permanent loan modification.  (Docket Entry ## 7, 25).  In response, plaintiffs maintain that the TPP was a binding contract that did not require defendant's countersignature and that defendant breached the contract by failing to offer a permanent loan modification.  (Docket Entry ## 21, 31).

"In order to assert a claim for breach of contract in Massachusetts, plaintiffs must allege 'that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage.'"  Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 351 (D. Mass. 2011) (citation omitted).  In this district, a number of courts conclude that a TPP itself is an offer.  Id. (concluding that "the TPPs were offers, and that plaintiffs' signatures and subsequent monthly payments under the terms of the TPP constituted acceptance of those offers"); see also Conte v. Bank of America, N.A., 52 F. Supp. 3d 265, 268 (D. Mass. 2014) ("[c]ourts have consistently found that TPPs have all the required elements of binding contracts") (collecting authority); Stagikas v. Saxon Mortg. Servs., Inc., 795 F. Supp. 2d 129, 136 (D. Mass. 2011).  Presented with an argument that a TPP is not

12

an enforceable contract until the bank countersigns the document, the court in <u>Nickerson-Reti v. Bank of Am., N.A.</u>, Civil Action No. 13-12316-FDS, 2018 WL 2271013 (D. Mass. May 17, 2018), however, distinguished <u>Bosque</u>, <u>Conte</u>, <u>Stagikas</u>, and <u>Durmic v. J.P. Morgan Chase Bank, NA</u>, Civil Action No. 10-10380-RGS, 2010 WL 4825632, at *4 (D. Mass. Nov. 24, 2010), because the decisions did not "explicitly address the question of whether the bank's signature is required" to effectuate a binding contract.  <u>Id.</u> at *15.  The language of the TPP in <u>Nickerson-Reti</u> contains language similar to the language in plaintiffs' TPP.  See <u>id.</u> at *4.  In construing that language, the court determined the TPP was "not an *offer* but rather an *invitation* for the borrower to make an offer along the lines of the terms outlined, which the bank is then empowered to accept by way of countersigning and returning the document."  <u>Id.</u> at *13 (emphasis in original); <u>accord</u> <u>Brown v. OneWest Bank, FSB</u>, No. 13-P-1185, 2014 WL 3953088, at *2, n.6 (Mass. App. Ct. 2014) (unpublished); <u>see</u> <u>also</u> <u>Fisher v. HSBC Bank</u>, 332 F. Supp. 3d 435, 440 (D. Mass. 2018) (finding that "TPP is preparatory to a modification of the loan" and therefore not subject to statute of frauds based on "unless and until" language in section 2(G)(i)-(iii)).

Both the <u>Nickerson-Reti</u> and <u>Brown</u> decisions rely on the well-settled contract principle that "'the parties must have a

present intention to be bound by [an] agreement.'" Nickerson-
Reti v. Bank of Am., N.A., 2018 WL 2271013, at *12 (quoting
Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703
(Mass. 2000)); Brown v. OneWest Bank, FSB, 2014 WL 3953088, at
*2.  "A manifestation of willingness to enter into a bargain is
*not* an offer if the person to whom it is addressed knows or has
reason to know that the person making it does not intend to
conclude a bargain until he has made a further manifestation of
assent."  Restatement (Second) of Contract § 26 (1981) (emphasis
added); accord Nickerson-Reti v. Bank of Am., N.A., 2018 WL
2271013, at *12.

Whereas the reasoning in Nickerson-Reti and Brown is well
taken and the construction of the TPP's language at a minimum
more than plausible, another plausible reading is that the TPP
was an offer which plaintiffs accepted by complying with the
conditions in the TPP, including making the three periodic
payments in a timely manner.  In fact, the First Circuit in
Young v. Wells, 717 F.3d 224 (1st Cir. 2013), found it plausible
that a TPP with language similar to the language in section
three in plaintiffs' TPP was an offer which, if Young complied
with various conditions in the TPP, required the bank to offer
Young a permanent modification.[6]  Id. at 234.  Although defendant

---

[6]  Although Young received a signed permanent modification from
the bank, this fact was not material to the court's construction

14

attempts to distinguish Young on the basis that plaintiffs in the case at bar do not allege they satisfied HAMP's eligibility requirements (Docket Entry # 7), Young instructs that a court may examine HAMP and its attendant guidelines as extrinsic evidence at a *later* stage to interpret ambiguous terms.  Id. at 237.  On a motion to dismiss, all contractual ambiguities are construed in plaintiffs' favor in the government-drafted, uniform TPP.  Id. at 235-36.  The courts in Nickerson-Reti and Brown rendered decisions on summary judgment motions as opposed to a Rule 12(b)(6) motion to dismiss.

In seeking a dismissal of the contract claim, defendant points to language in the cover letter requiring plaintiffs to qualify under HAMP.  (Docket Entry # 25).  Plaintiffs also rely on the cover letter, albeit to clarify the term "offer" in the TPP.  (Docket Entry # 21).  It is debatable whether the cover letter forms part of the TPP, or constitutes extrinsic evidence. The cover letter's language favors defendant because it states that "*[i]f* [plaintiffs] qualify under the federal government's Home Affordable Modification program *and* comply with the terms of the Trial Period Plan, [defendant] will modify [their] mortgage loan."  (Docket Entry # 21-1, p. 1) (emphasis added). On a motion to dismiss, however, the cover letter's language

---

of the language in section three and its determination that the TPP was an offer.  Id. at 230, 234.

cannot provide a basis to construe an ambiguity in the TPP

against plaintiffs.  In any event, in light of Young, 717 F.3d

at 234-239, and other cases in this district involving motions

to dismiss, this court finds a plausible basis for a breach of

contract claim.[7]  See Bosque v. Wells Fargo Bank, N.A., 762 F.

Supp. 2d at 351 (denying motion to dismiss and finding it "plain

that TPPs were offers, and that plaintiffs' signatures and

subsequent monthly payments under the terms of the TPP

constituted acceptance of those offers"); Durmic v. J.P. Morgan

Chase Bank, NA, 2010 WL 4825632, at *4 (denying motion to

dismiss and declining to decide whether TPP was binding contract

with all material terms as opposed to a promise to provide the

plaintiff with a loan agreement at a later date because "the

issue is one of the parties' intent").

II.   Implied Covenant of Good Faith and Fair Dealing

Defendant seeks to dismiss Count II arguing that there is

no basis to expand the contractual duties and obligations

through the implied covenant of good faith and fair dealing.

Specifically, defendant maintains that the TPP was never a

binding contract because, as discussed with regard to the breach

of contract claim, there was no present intent to be bound

---

[7]   Inasmuch as this court has case management authority and a
referral of all dispositive motions (Docket Entry # 19), it may
be appropriate for defendant to file an early motion for summary
judgment.

16

"unless and until" defendant countersigned the agreement. (Docket Entry ## 7, 25) (citing Heewon Lee v. BAC Home Loans Servicing, LP, Civil Action No. 10-12226-GAO, 2014 WL 4964411, at *2 (D. Mass. Sept. 30, 2014)).  Plaintiff points to the two, incorrect reasons defendant gave in the April 2013 denial letter and the failure to provide plaintiff with a permanent modification.  (Docket Entry ## 21, 31).

In Massachusetts, "the implied covenant of good faith and fair dealing applies to every contract."  Heewon Lee v. BAC Home Loans Servicing, LP, 2014 WL 4964411, at *2 (citing FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 100 (1st Cir. 2009)). "Where no contract exists, there can be no derivative covenant of good faith and fair dealing."  Durmic v. J.P. Morgan Chase Bank, NA, 2010 WL 4825632, at *5 (citation omitted).  The covenant "'may not be invoked to create rights and duties not otherwise provided for in the existing contractual relationship.'"  Agard v. Deutsche Bank Nat. Trust Co., Civil Action No. 12-10472-RWZ, 2012 WL 4498906, at *3 (D. Mass. Oct. 2, 2012) (quoting Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004)).  Rather, the "'scope of the covenant is only as broad as the contract that governs the particular relationship.'"  Young 717 F.3d at 238 (quoting Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 683-84 (Mass. 2005)).

17

As explained in the previous section, plaintiffs present a plausible basis for a breach of contract claim based on the premise that the TPP was an offer which plaintiffs accepted by tendering the three, timely payments.  Accordingly, defendant's argument that no contract exists and, therefore, no covenant arose does not provide a means to dismiss Count II.  The decision in Lee is distinguishable because, unlike plaintiffs, Lee "received an offer for a permanent modification agreement under HAMP" and, because "[h]e then rejected" the offer, "[n]o implied covenant arose with respect to a potential contract that never came into existence."  Heewon Lee v. BAC Home Loans Servicing, LP, 2014 WL 4964411, at *2.  Thus, while the legal basis for defendant's argument is well founded, on a motion to dismiss the facts and the plausibility of the breach of contract claim render the breach of the implied duty of good faith and fair dealing claim plausible.

III.  Promissory Estoppel

Defendant moves to dismiss the promissory estoppel claim in Count III on the basis that plaintiffs fail to allege that "they reasonably relied on an unambiguous promise that they would receive a permanent HAMP modification."  (Docket Entry # 7, p. 2).  Defendant argues that the TPP does not contain an unambiguous promise and there is no reasonable reliance on the part of plaintiffs.  Rather, "the TPP makes clear" that

18

defendant needed to review plaintiff's financial information to verify that plaintiff qualified for the permanent modification, according to defendants.  (Docket Entry ## 7, 25).

"Reduced to basic terms, promissory estoppel 'consists simply of a promise that becomes enforceable because of the promisee's reasonable and detrimental reliance.'"  Suominen v. Goodman Indus. Equities Mgmt. Grp., LLC, 941 N.E.2d 694, 701 (Mass. App. Ct. 2011) (quoting Rooney v. Paul D. Osborne Desk Co., 645 N.E.2d 50, 51 (Mass. App. Ct. 1995)).  The essential elements of a promissory estoppel claim include "an unambiguous promise" and a reasonable reliance on that promise.  Rhode Island Hosp. Tr. Nat. Bank v. Varadian, 647 N.E.2d 1174, 1178 (Mass. 1995) ("essential element under the promissory estoppel theory is that there be an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation").

Here again, plaintiffs raise a plausible claim that the TPP was an offer which plaintiffs accepted by tendering the three payments in a timely manner.  Promissory estoppel provides "an alternative theory of recovery for a contract that is not supported by consideration."  Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d at 353.  As stated in the amended complaint, defendant made representations that if plaintiffs returned the executed TPP with the supporting documentation and made the

19

timely payments, defendant would provide them a permanent loan modification.  Whereas a more developed record on summary judgment may lead to a different construction of the record, the nature of review on a motion to dismiss renders the promissory estoppel claim plausible.  Count III is not subject to dismissal at this juncture.

III.  Timeliness

Defendant relies on the statutes of limitations in Massachusetts for contract and tort claims as a means to dismiss all of the claims as untimely.  "Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear on the face of the plaintiff's pleadings."  Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009) (internal quotation marks and citations omitted).  "When the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to sketch a factual predicate that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate."  Id. at 114.

Defendant argues that plaintiffs were on notice and the claims began to accrue no later than April 13, 2010, when

20

plaintiffs received the denial letter.[8]  In response, plaintiffs argue that the November 29, 2010 filing of the Calfee class action tolls the limitations periods until March 2016, when the Ninth Circuit affirmed the district court's denial of class certification.  They also submit that cross-jurisdictional tolling does not apply because the Calfee plaintiffs filed the Calfee class action in this district.  Moreover, even if cross-jurisdictional tolling applies, plaintiffs contend that Fed. R. Civ. P. 23(f) ("Rule 23(f)"), enacted in 1998 to allow interlocutory appeals of class certification denials, is aimed at discouraging class members from filing new class action suits while the appeal is pending thereby promoting judicial "'efficiency and economy of litigation.'"  (Docket Entry # 21, p. 16).  Tolling during an appeal is therefore appropriate because it serves this purpose, according to plaintiffs.  (Docket Entry ## 21, 31).  Defendant maintains that even assuming tolling is appropriate, the end date is October 7, 2013, when the district court denied class certification.  Hence, the chapter 93A claim is untimely even if tolling applies, according to defendant.  (Docket Entry ## 7, 25, 33).

---

[8]  Plaintiffs essentially agree that the denial letter constitutes the violation and therefore, absent tolling, triggers the limitations period for the contract and the tort claims.  (Docket Entry # 21, p. 18) ("Citi's violation here occurred on April 13, 2010, when it sent the letter denying [plaintiffs] a permanent modification").

Under section five of Massachusetts General Laws chapter 260, the limitations period for a chapter 93A claim is four years.  Mass. Gen. Laws ch. 260, § 5A.  The remaining claims are subject to a six-year limitations period.  See Mass. Gen. Laws ch. 260, § 2; Micromuse, Inc. v. Micromuse, PLC, 304 F. Supp. 2d 202, 209 (D. Mass. 2004); Galgana v. Wells Fargo Bank, N.A., Civil Action No. 17-10924-MLW, 2018 WL 1542055, at *4 (D. Mass. Mar. 29, 2018), appeal dismissed, 2018 WL 5733664 (1st Cir. June 5, 2018).

Here, defendant sent the denial letter on April 13, 2010. (Docket Entry # 4, ¶ 32).  On November 29, 2010, the Calfee plaintiffs filed the Calfee class action in this district.  See Calfee v. CitiMortgage, Inc., Civil Action No. 10-12051-WGY (D. Mass. 2010).  In October 2011, the Calfee class action was transferred for consolidated pretrial proceedings to the CitiMortgage class action as part of multidistrict litigation in the Central District of California.  (Docket Entry # 4, ¶ 39) (Docket Entry # 21-4, p. 5).  On October 7, 2013, the district court in the CitiMortgage class action denied class certification.  In re CitiMortgage, Inc. Home Affordable Modification Program Litigation, MDL No. 11-2274-DSF, 2013 WL 8844095 (C.D. Cal. Oct. 7, 2013).  The Ninth Circuit affirmed the denial of class certification on March 2, 2016.  (Docket

Entry 4, ¶ 39).  Plaintiffs filed this action on February 16, 2018.

As a matter of federal law, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." American Pipe and Const. Co. v. Utah, 414 U.S. 538, 554 (1974) (allowing would-be class members as intervenors to intervene in federal antitrust action after class certification denial notwithstanding expiration of statute of limitations).  The Supreme Court in Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983), "expanded the *American Pipe* tolling rule beyond intervenors to apply to putative class members who bring a separate suit after a court has declined to certify a lawsuit as a class action."  Arivella v. Lucent Techs., Inc., 623 F. Supp. 2d 164, 174 (D. Mass. 2009) (applying American Pipe to toll federal ERISA law claim); see Crown, Cork & Seal Co. v. Parker, 462 U.S. at 350 (Title VII employment discrimination case tolled during pendency of putative federal class action).  Overall, the Supreme Court in American Pipe "balanced the policies served by the class action rule, Fed.R.Civ.P. 23, and the policies served by the statute of limitations."  Basch v. Ground Round, Inc., 139 F.3d 6, 10 (1st Cir. 1998).  As explained in Arivella:

> Statutes of limitations serve to "ensure essential fairness to defendants and to bar a plaintiff who 'has slept on his rights'"; both functions "are satisfied, when a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment."

Arivella v. Lucent Techs., Inc., 623 F. Supp. 2d at 174 (quoting American Pipe, 414 U.S. at 554-55) (brackets and ellipses omitted).  When the policies underlying the statute of limitations outweigh those of judicial efficiency and economy that underlie Rule 23, tolling does not necessarily apply.  See Basch v. Ground Round, Inc., 139 F.3d at 11 (policies of judicial economy and efficiency that underlie Rule 23 do not warrant extending tolling to plaintiffs who file repeated class actions "to stretch limitations periods").  Moreover, entitlement to equitable tolling ordinarily requires plaintiffs to demonstrate their diligence in pursuing their claims.  China Agritech, Inc. v. Resh, 138 S.Ct. 1800, 1808 (2018) (discussing American Pipe and explaining that, "[o]rdinarily, to benefit from equitable tolling, plaintiffs must demonstrate that they have been diligent in pursuit of their claims").

The Supreme Court in American Pipe applied a federal tolling rule in a putative class action lawsuit asserting federal law claims.  American Pipe, 414 U.S. at 554-55; see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999) ("Supreme

24

Court has held that the statute of limitations in a subsequently filed federal question action should be equitably tolled during the pendency of a federal class action") (citing American Pipe, 414 U.S. at 552-53, and Crown, 462 U.S. at 353-54).  It remains an open question in the First Circuit whether a court sitting in diversity would apply state law to determine tolling based on a federal putative class action suit in another jurisdiction.  The case at bar consists of state law claims with jurisdiction based on diversity, 28 U.S.C. § 1332.  (Docket Entry # 4, ¶ 2).

Ordinarily, "a federal court sitting in diversity must apply the relevant state's statute of limitations, including its accrual rules."  Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 205 (1st Cir. 2015).  A federal court sitting in diversity addressing the timeliness of a state law cause of action therefore applies the state's tolling rules. See id. at 204-205 (citing in parenthetical Walker v. Armco Steel Corp., 446 U.S. 740, 751 (1980), as "holding that whether filing of the complaint tolls the statute of limitations is governed by state law," and Loguidice v. Metro. Life Ins. Co., 336 F.3d 1, 6 (1st Cir. 2003), as "applying Massachusetts' discovery rule").

Recognizing that the "majority" of courts apply state as opposed to federal law in such circumstances, the Second Circuit in Casey v. Merck & Co., 653 F.3d 95 (2d Cir. 2011), held "that

25

a federal court evaluating the timeliness of state law claims must look to the law of the relevant state to determine whether, and to what extent, the statute of limitations should be tolled by the filing of a putative class action in another jurisdiction." Id. at 100. Here, in light of the general rule to apply state accrual rules to state law claims when sitting in diversity, Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC, 794 F.3d at 204-05, and the above-noted "majority" view, Casey v. Merck & Co., 653 F.3d at 100, this court follows the lead of the Second Circuit and applies state law, i.e., Massachusetts law, to determine if such law would recognize cross-jurisdictional tolling by the filing of a putative class action in another jurisdiction. Absent tolling during the appeal period under Massachusetts law, the chapter 93A claim is untimely.[9] Before addressing state law, however, it is helpful to outline the parameters of federal tolling under American Pipe as it pertains to the appeal period.

"Most courts, including the First Circuit, . . . agree that tolling ceases upon entry of an order denying class certification in the trial court." Arivella v. Lucent Techs., Inc., 623 F. Supp. 2d at 174-75 (collecting authority); see

---

[9]  The district court in the CitiMortage class action denied class certification on October 7, 2013. Plaintiffs filed this action more than four years later in February 2018.

Fernandez v. Chardon, 681 F.2d 42, 48 (1st Cir. 1982); Womack v. United Parcel Serv., Inc., 311 F. Supp. 2d 492, 496-97 (E.D.N.C. 2004) (citing cases).  In fact, circuit courts that address the issue uniformly conclude that American Pipe tolling ends when the district court denies class certification.  Giovanniello v. ALM Media, LLC, 726 F.3d 106, 116 (2d Cir. 2013) ("join[ing] each of our sister circuits and hold[ing] that *American Pipe* tolling does not extend beyond the denial of class status") (citing First,[10] Fourth, Fifth, Sixth, Seventh, Eleventh, and Federal Circuit court decisions).  In American Pipe and Crown, "plaintiffs reasonably relied on the class representative, who sued timely, to protect their interests in their individual claims."  China Agritech, Inc. v. Resh, 138 S.Ct. at 1808. "This objectively reasonable reliance rationale breaks down once the district court disallows class status."  Giovanniello v. ALM Media, LLC, 726 F.3d at 117; accord Bridges v. Dep't of Maryland State Police, 441 F.3d 197, 211 (4th Cir. 2006) ("no absentee class member could reasonably have relied on the named plaintiffs, nor the district court, to protect their interests in the period following the district court's 2001 certification denial").  At that point, the named plaintiff "has no responsibility to pursue any additional avenue to maintain the

---

[10]  With respect to the First Circuit, the Second Circuit in Giovanniello cites to Fernandez v. Chardon, 681 F.2d at 48.

action as a class action under Rule 23, such as appeal or reconsideration."  Giovanniello v. ALM Media, LLC, 726 F.3d at 117.  Thus, "unlike during the pendency of class certification" in the district court "where Rule 23 requires that named plaintiffs function as representatives of potential class members, once class status has been disallowed, Rule 23 no longer operates to protect non-named plaintiffs."  Id.

As also reasoned in Giovanniello, although reconsideration and appeal remain available to challenge the denial, they "rarely result in a reversal of the district court decision." Id. at 117-18; accord Stone Container Corp. v. United States, 229 F.3d 1345, 1355 (Fed. Cir. 2000) (agreeing with Eleventh Circuit that allowing tolling to continue during appeal "would lead to unnecessary litigation in the few cases in which a district court abuses its discretion in denying class certification and is reversed on appeal").  As a result, any reliance on the success of an appeal to salvage class certification is not reasonable.  Giovanniello v. ALM Media, LLC, 726 F.3d at 118 ("conclud[ing] that the remote possibility of reversal of the district court's denial of class status does not provide a basis for objectively reasonable reliance by individual plaintiffs").

Contrary to plaintiffs' argument, the 1998 advent of Rule 23(f) allowing interlocutory appeals for class certification

28

denials does not materially alter this calculus.  See id. (concluding that "advent of Rule 23(f) does not compel us to depart from the rule adopted by every other circuit court to have addressed this issue"); accord Stone Container Corp. v. United States, 229 F.3d at 1355 (rejecting tolling during appeal and recognizing that:  Rule 23(f) now allows interlocutory appeals; "appellate court has discretion to deny the appeal, thereby leaving the certification unresolved until final judgment"; and "lengthy delays" are "created if the limitations period" is "tolled until the appellate process [is] complete"). In addition to the reasoning in Stone, an interlocutory appeal, although rare, existed prior to the amendment.  Giovanniello v. ALM Media, LLC, 726 F.3d at 118.  What remains the same is that the named plaintiffs may *continue* to wait for a final judgment rather than pursue an interlocutory appeal which, "in some instances," may extend the limitations period and leave class certification unresolved "for many years."  Id. (citing Stone Container Corp. v. United States, 229 F.3d at 1355).  Extending the limitations period "for many years" to the conclusion of an appeal, id., contravenes the expressed legislative policy placing an end date on a claim that statutes of limitations embody.  See also Stone Container Corp. v. United States, 229 F.3d at 1355 ("[l]imitations periods could be tolled for years[,]" during which "evidence could be lost, memories could

29

fade, and witnesses could disappear"). Accordingly, federal law does not include the appeal period when applying cross-jurisdictional tolling.

Turning to state law which, as noted, provides the framework to adjudicate cross-jurisdictional tolling, the issue reduces to whether Massachusetts law "would engage in equitable tolling during the pendency of a class action in another court—in this case, a federal court in another jurisdiction." Wade v. Danek Med., Inc., 182 F.3d at 287. Plaintiffs initially argue that "[t]he [c]oncept of '[c]ross-[j]urisdictional [t]olling'" does not even apply because the Calfee class action and this action are both in "the same jurisdiction," i.e., "the District of Massachusetts." (Docket Entry # 21, p. 18).

First and foremost, the vantage point from which to judge cross-jurisdictional tolling based on the other "jurisdiction" when applying state law is the state court system, i.e., Massachusetts state courts. See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig., 995 F. Supp. 2d 291, 311 (S.D.N.Y. 2014)("cross-jurisdictional tolling applies even where the class action and subsequent action were both filed in the same federal court, because cross-jurisdictional tolling 'includes all situations where a class action is filed outside the state court system'") (quoting Centaur Classical Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp., 878 F. Supp. 2d

30

1009, 1017 (C.D.Cal. 2011), in parenthetical), affm'd, 829 F.3d 173, cert. denied, 137 S.Ct. 2326 (June 27, 2017); see also Casey v. Merck & Co., 653 F.3d at 101 (examining whether "Supreme Court of Virginia" would adopt "equitable rule of cross-jurisdictional tolling for federal class actions" and certifying question to Supreme Court of Virginia); Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025 (9th Cir. 2008) ("California's interest in managing its own judicial system counsel[s] us not to import the doctrine of cross-jurisdictional tolling into California law" and "American Pipe-which allows tolling within the federal court system in federal question class actions—does not mandate cross-jurisdictional tolling as a matter of *state procedure*") (emphasis added).  The following passage in Bear Stearns exemplifies that where state law applies, the issue is whether the federal class action filed outside the state court system will toll the state law claims in a state court proceeding during the pendency of class certification:

> In certain circumstances, a New York statute of limitations may be tolled by the pendency of a class action, but New York currently [has] not recognized tolling where that class action is filed outside New York state court (*so-called "cross-jurisdictional tolling"*).  See Soward v. Deutsche Bank AG, 814 F.Supp.2d 272, 281–82 (S.D.N.Y. 2011) (refusing to toll state law fraud claims because of earlier class action filed in the S.D.N.Y., as the court "cannot say that New York would adopt cross-jurisdictional tolling and [therefore] declin[ing] to import the doctrine into New York's law"); . . . Cross-jurisdictional tolling is at

31

> issue whenever a court considers the timeliness of state law claims originally filed outside that state's courts. See Centaur Classical Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp., 878 F.Supp.2d 1009, 1017 (C.D.Cal. 2011) (holding that cross-jurisdictional tolling applies even where the class action and subsequent action were both filed in the same federal court, because cross-jurisdictional tolling "includes all situations where a class action is filed outside the . . . state court system").

In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig., 995 F. Supp. 2d at 311–12 (emphasis added). Defendant is also correct that the Calfee class action filed in federal district court is filed in a different jurisdiction than Massachusetts state court. In short, plaintiffs' argument that cross-jurisdictional tolling does not apply is without merit.

Next, with respect to cross-jurisdictional tolling under Massachusetts law, the parties do not point to any decision by a Massachusetts state court that addresses cross-jurisdictional tolling of Massachusetts state law claims based on a putative federal class action. Where, as here, the Massachusetts Supreme Judicial Court ("SJC") has not decided the application of American Pipe tolling to a state law claim under Massachusetts law, this court's task is "'to predict how'" the SJC "'would likely decide the question.'" In re PHC, Inc. S'holder Litig., 894 F.3d 419, 428 (1st Cir.) (quoting Butler v. Balolia, 736 F.3d 609, 612-13 (1st Cir. 2013)), cert. denied sub nom. Shear v. MAZ Partners, LP, 139 S. Ct. 489, 202 L. Ed. 2d 378 (2018).

32

In undertaking this task, "'a federal court should consult the types of sources that the state's highest court would be apt to consult, including analogous opinions of that court, *decisions of lower courts in the state*, precedents and trends in other jurisdictions, learned treatises, and considerations of sound public policy.'"  Id. at 613 (emphasis added and brackets omitted).

Although not identified by the parties, a Massachusetts Appeals Court decision supports American Pipe tolling at least as to untimely intervenor putative class members.  DiCerbo v. Comm'r of Dep't of Employment & Training, 763 N.E.2d 566, 572 n.13 (Mass. App. Ct. 2002) ("as to putative class members who wish to intervene, the statute of limitations is tolled upon the filing of the complaint") (citing American Pipe, 414 U.S. at 554, and Crown, 462 U.S. at 353-354).  The Massachusetts Appeals Court decision in DiCerbo makes it more likely the SJC will adopt American Pipe to toll the time period between the November 2010 filing of the complaint in the Calfee class action and the October 2013 denial of class certification by the district court in the CitiMortgage class action.

A district court case in this district also applied cross-jurisdictional tolling to Massachusetts state law claims.  See Town of Princeton v. Monsanto Co., Solutia Inc., 202 F. Supp. 3d 181, 194-96 (D. Mass. 2016).  The persuasive strength of the

Monsanto decision, however, is lessened by the fact that the parties did not raise and the court did not expressly address American Pipe tolling.[11]

The reasoning underlying American Pipe and Crown, including the fair notice to defendant of possible claims by unnamed class members and avoiding a multiplicity of individual actions during the class certification process, lends additional support to concluding that the SJC will likely accept tolling during the class certification process.  Trends in other jurisdictions, i.e., the federal court cases that apply federal law to similar tolling issues, and the reasoning in those cases are also indicative that the SJC will adhere to cross-jurisdictional tolling during the class certification process.[12]  Finally, although applying federal law, the Crown decision extended American Pipe tolling to the circumstance similar to this case

---

[11]  The court in Monsanto considered whether cross-jurisdictional tolling applies when the claims in the two cases are only substantially similar as opposed to identical.  Id.  The parties did not raise an argument that Massachusetts law does not recognize cross-jurisdictional tolling in the first place and the court did address the matter expressly.

[12]  This court has also considered the trends in state court cases that do not apply Massachusetts law.  Separately, even considering all of the concerns identified by plaintiffs (Docket Entry # 31, pp. 1-5), including Massachusetts' strong preference for chapter 93A class actions, Feeney v. Dell Inc., 908 N.E.2d 753, 762 (Mass. 2009), this court's decision that the SJC would recognize cross-jurisdictional tolling during the class certification process but not during the subsequent appeal remains unchanged.

and DiCerbo case cites to Crown in applying Massachusetts law. See Arivella v. Lucent Techs., Inc., 623 F. Supp. 2d at 174 (Crown expanded American Pipe "beyond intervenors to apply to putative class members who bring a separate suit after a court has declined to certify a lawsuit as a class action"); DiCerbo v. Comm'r of Dep't of Employment & Training, 763 N.E.2d at 572 n.13 (citing Crown, 462 U.S. at 353-54).  Absent additional authority to the contrary not already cited by the parties, this court predicts the SJC will adopt cross-jurisdictional tolling for the time period beginning with the filing of the Calfee class action (November 2010) and the decision denying class action certification (October 2013).  The breach of contract, implied covenant of good faith and fair dealing, and the promissory estoppel claims are therefore timely.

Once a district court denies class certification, however, a plaintiff has little expectation that an appeal will reverse the lower court.  See Giovanniello v. ALM Media, LLC, 726 F.3d at 118.  Plaintiffs' failure to promptly file this action after the October 2013 denial does not bespeak of acting diligently to protect their claims.  In other contexts, equitable tolling in Massachusetts supports the exercise of reasonable diligence as opposed to the lack of reasonable diligence.  See Rife v. One W. Bank, F.S.B., 873 F.3d 17, 20 (1st Cir. 2017) ("[i]n Massachusetts, 'equitable tolling only applies "if a plaintiff

35

exercising reasonable diligence could not have discovered information essential to the suit"'"); see generally Stone Container Corp. v. United States, 229 F.3d at 1355 ("[l]imitations periods could be tolled for years[,]" during which "evidence could be lost, memories could fade, and witnesses could disappear"). The SJC is unlikely to apply cross-jurisdictional tolling to a plaintiff who waited more than four years after a denial of class certification at the district court level (October 2013) and almost two years after a denial of the appeal (March 2016) to belatedly file an individual suit.[13]

The previously discussed reasoning that led the above-cited courts to reject extending American Pipe tolling to the appeal process is persuasive and is more than likely to persuade the SJC to reach the same conclusion. The trend in other jurisdictions overwhelmingly favors denying tolling during the appellate process. Plaintiffs' argument to toll the time period during the appeal based on the amendment to Rule 23 (Docket Entry # 31, pp. 4-5) is not convincing for previously discussed

---

[13]   Plaintiffs, who dismissed an earlier lawsuit against defendant without prejudice (Docket Entry # 4, ¶ 39), represent that counsel "communicated extensively with Citi and its attorneys since early 2017, mere months after the appellate order affirming the denial of class certification." (Docket Entry # 21, p. 18). The fact remains that they did not file suit during the appeals court process and it is unlikely the SJC would extend tolling to the time period during the appeal.

reasons.  Those same reasons render it unlikely that the SJC would toll this time period as well.  In short, based on these and other concerns, this court concludes that the SJC would not extend cross-jurisdictional tolling beyond the initial denial of class certification to include the interlocutory appeal period.  As a result, the chapter 93A claim is subject to dismissal as untimely.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[14] that the motion to dismiss (Docket Entry # 6) be **ALLOWED** as to the chapter 93 claim (Count IV) and otherwise **DENIED**.  This court will conduct a scheduling conference at 2:15 p.m. on March 14, 2019.

/s/ Marianne B. Bowler_____
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[14]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection should be included.  See Fed. R. Civ. P. 72(b); Rule 3, Rules for U.S. Magistrate Judges in U.S. District Court for the District of Massachusetts.  The written objections must specifically identify the portion of the Report and Recommendation to which objection is made.  Any party may respond to another party's objections within 14 days after being served with a copy of the objections.  Failure to file objections within the specified time waives the right to appeal the order.